## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

KEVIN LOWERY, on his behalf and
on behalf of similarly situated persons,

       Plaintiff,

JUDY LOVATO, DANNY GABALDON,
BARBARA THOMAS, each on his/her behalf
and on behalf of similarly situated persons,

       Plaintiffs-in-Intervention,

vs.                                       No. CIV 09-0457 JB/WDS

CITY OF ALBUQUERQUE, MARTIN CHAVEZ,
in his individual capacity as mayor of the City of
Albuquerque; RAY SCHULTZ, in his individual
capacity as chief of police of the City of Albuquerque
Police Department; JOHN OLSTEAD; and MARK
CRANDALL, and JOHN DOE POLICE OFFICERS,

       Defendants,

MICHELLE WALL, LARRY MOYA,

       Defendants-in-Intervention.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Plaintiff's [sic] Motion and Memorandum

of Law to Adopt Jury Selection Procedures to Impanel an Impartial Jury, filed March 26, 2012 (Doc.

106)("Motion"). The Court held a hearing on April 2, 2012. The primary issue is whether the Court

should adopt a jury selection procedure that includes a pretrial juror questionnaire, individual

questioning of prospective jurors on certain topics, and attorney participation in voir dire. The Court

will grant in part and deny in part the Motion. The Court will distribute the juror questionnaire to

the panel on the morning of trial and will allow some questions to be asked at the bench to avoid

contaminating the panel. The Court will not, however, permit completely individualized questioning of prospective jurors.

## PROCEDURAL BACKGROUND

On April 7, 2009, K. Lowery, on his behalf and on behalf of similarly situated persons, filed the Class Action Complaint for Injunctive Relief, Declaratory Relief and for Recovery of Damages Resulting from a Deprivation of Constitutional Rights in the Second Judicial District of New Mexico. See Doc 1-1 (dated April 7, 2009), filed May 8, 2009 ("Complaint"). Defendants City of Albuquerque, Martin Chavez, Ray Schultz, John Olstead, Crandall, and John Doe Police Officers removed the matter on May 8, 2009. See Notice of Removal, filed May 8, 2009 (Doc. 1). The Notice of Removal asserts that the Court has jurisdiction over K. Lowery's federal law claims under 28 U.S.C. § 1331 and that removal is permitted under 28 U.S.C. § 1441. See Notice of Removal ¶ 2, at 1.

The Complaint contains ten counts. See Complaint at 4-14. Count I alleges John Doe Police Officers deprived K. Lowery of his Fourth-Amendment rights, because they seized his person without probable cause. See Complaint ¶ 22, at 4. Count II states that the Nuisance Abatement Team inspector and John Doe Police Officers violated K. Lowery's Fourth-Amendment rights when they entered into the curtilage of his home. See Complaint ¶27, at 5. Count III alleges that the police and city inspectors entry and search of the home was unreasonable, and therefore a deprivation of K. Lowery's Fourth-Amendment rights. See Complaint ¶ 32, at 5. Count IV alleges that the Defendants violated K. Lowery's Fourth-Amendment rights through unreasonable seizure of his home. See Complaint ¶ 38, at 6. In Count V, K. Lowery contends that Crandall and John Doe Police Officers seized his property without procedural due process in violation of the Fourteenth Amendment. See Complaint ¶ 44, at 6. Count V is an alternative to Count IV, alleging that

Crandall and John Doe Police Officers afforded him inadequate pre-deprivation procedure.  See Complaint at 6-7.  Count VI alleges a procedural due-process violation based on the Defendants' failure to release K. Lowery's property to him upon his filing a notice of appeal.  See Complaint ¶ 51, at 7.  Count VII is a Fourteenth-Amendment claim related to requiring environmental testing without sufficient factual basis.  See Complaint ¶ 55, at 8.  Count VIII is a Fourteenth-Amendment claim related to overall use of the Nuisance Abatement Team to deprive property owners of property rights and a request to declare the Substandard Building Ordinance unconstitutional.  See Complaint ¶ 74, at 11.  Count IX alleges that the ordinance violates the New Mexico State Constitution and asserts tort claims on behalf of K. Lowery against the Defendants, including torts of false imprisonment for his detention and trespass for entry into his curtilage and home, and seizure of his home.  See Complaint ¶ 77, at 12.  Count X alleges that the Defendants have a custom, practice, or policy of intentionally violating civil or constitutional rights.  See Complaint ¶ 79, at 12.  Count X also seeks to represent all individuals or corporations whose property the City of Albuquerque's Nuisance Abatement Team, either directly or through its enforcement of the housing code, seized or deprived of the benefit of use, from three years of the filing of this Complaint until the alleged policy ceases, and seeks certification of a class for Counts IV through X.  See Complaint ¶ 82, at 12.

On August 11, 2009, Gabaldon, Lovato, and Thomas filed a Complaint in Intervention.  See Complaint in Intervention, filed August 11, 2009 (Doc. 11).  On August 10, 2010, K. Lowery, Lovato, Gabaldon, and Thomas, on behalf of themselves and the class, filed an Amended Complaint.  See Amended Class Action Complaint for Injunctive Relief, Declaratory Relief and for Recovery of Damages Resulting from a Deprivation of Constitutional Rights, filed August 10, 2010 (Doc. 48, at 6-16)("Amended Complaint").   The Amended Complaint modified the Complaint to

(i) incorporate Gabaldon, Lovato and Thomas into Counts IV, V, VII, VIII, IX, and X, see Amended Complaint at 6-16; (ii) add Lovato to Count VI, see Amended Complaint at 9; and (iii) add facts specific to Gabaldon, Lovato, and Thomas, see Amended Complaint at 2-6.

On June 4, 2010, K. Lowery, Lovato, Gabaldon, and Thomas moved for class certification. In a hearing on September 14, 2010, the parties agreed that the requirements of rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure were satisfied. See Fed. R. Civ. P. 23. See Transcript of Hearing at 4:11-12 (taken September 14, 2010)(Kennedy)("Sept. 14, 2010 Tr.").[1] The Defendants reserved the right to challenge the class at any time. See Sept. 14, 2010 Tr. at 7:11-21 (Court, Levy). The parties agreed that the Defendants did not admit that there was an unconstitutional policy and that there was no admission of liability. See Sept. 14, 2010 Tr. at 6:15-21 (Levy). The Court orally granted the motion for class certification at the hearing, see Sept. 14, 2010 Tr. at 9:2-13 (Court), and entered a written order approving a class action notice and setting a trial for April 18, 2011, see Order Approving Class Action Notice and Trial Setting, filed December 14, 2010 (Doc. 67). On March 31, 2011, the Court entered its March 31, 2011 MOO and, focusing on the issue "whether an objective observer would believe that the violations for which the Plaintiffs were cited posed an immediate threat to the lives or safety of the occupants," found that "the Defendants failed to provide evidence that the presence of drugs or drug paraphernalia posed an immediate threat to the life or safety of the occupants of the seized homes that would create an exigent circumstance." March 31, 2011 MOO at 70-71. The Court then entered its April 13, 2011 MOO explaining why it granted the Motion for Class Certification and why the proposed class

---

[1]The Court's citations to the transcripts of the September 14, 2010 and April 2, 2012 hearings refer to the court reporter's original, unedited versions. Any final transcripts may contain slightly different page and/or line numbers.

satisfied the rule 23 requirements.  See Doc. 83, at 1-2.  The Court certified a class of all individuals or corporations whose property was seized without court order, or who were deprived of their property for suspected drug use and subsequent to the City of Albuquerque's Criminal Nuisance Abatement Team designating their property as substandard, from three years before Lowery filed his Complaint, until the policy ceases.  See April 13, 2011 MOO at 26-27.  The Court also: (i) designated K. Lowery, Lovato, Gabaldon, and Thomas as the class representatives; and (ii) appointed the Kennedy Law Firm as class counsel.  See April 13, 2011 MOO at 40.  On January 24, 2012, the Court rejected a proposed settlement because of fairness concerns, see Memorandum Opinion and Order at 2, filed January 24, 2012 (Doc. 96)("Jan. 24, 2012 MOO"), and the parties began to prepare for trial.

On March 26, 2012, the Plaintiffs filed the Motion.  See Doc. 106.  They ask that the Court "adopt jury selection procedures that include a pretrial juror questionnaire, individual questioning of prospective jurors on certain topics, and attorney participation in voir dire."  Motion at 1.  The Plaintiffs request "sufficient individualized questioning so that the selection process is meaningful," because venire members "must be able to speak freely, without shame or fear, so that the Court will understand whether they hold a bias that would prevent them from serving on the jury, or whether they are able to render a fair and impartial verdict."  Motion at 3.  The Plaintiffs assert that the "topics of drug abuse, drug trafficking, authority of law enforcement officers, Meth labs, psychiatric injuries, and homelessness are sensitive for many people, and many people harbor strong views on one or more of these topics."  Motion at 4.  They argue that jury bias is more of a risk in this case than in other civil cases.  See Motion at 4.  They contend that the Court and counsel are "faced with the delicate and complex task of eliciting sufficient information from the venire members . . . , while at the same time assuring that individual prospective jurors' biased opinions do not affect or

influence other prospective jurors."  Motion at 4.  The Plaintiffs assert that they have a right to question the venire panel and that denial of adequate venire is reversible error.  See Motion at 5-6 (citing Butler v. City of Camden, 352 F.3d 811 (3d Cir. 2003); Art Press, Ltd. v. W. Printing Mach. Co., 791 F.2d 616, 618 (7th Cir. 1986)).  They further assert that inadequate voir dire has been "held grounds for reversal by the Supreme Court, as well."  Motion at 6 (citing Aldridge v. United States, 283 U.S. 308, 313 (1931)).  They argue that their proposed jury selection procedures will "avoid the risk that venire members may answer questions on sensitive topics dishonestly."  Motion at 7.  The Plaintiffs ask that the Court allow jury selection procedures that will reveal prospective jurors' personal histories and prejudices.  See Motion at 7.  They contend that their procedures will:

> 1) assist the Court with excusing prospective juror[s] for cause; 2) provide the parties with sufficient information to enable them to argue challenges for cause and to exercise their peremptory challenges intelligently; [3)] expedite the jury selection process; and [4)] ensure that the venire members remain untainted by the bias, sympathy, or prejudice of an individual prospective.

Motion at 7.  The Plaintiffs also argue that, if the Court does not adopt procedures that are calculated to achieve these results, they will be denied "their constitutional right to a fair trial by an impartial jury."  Motion at 7.

With respect to the juror questionnaire, the Plaintiffs assert that questionnaires allow jurors to provide answers in private and conserves courtroom time.  See Motion at 8.  They also argue that questionnaires eliminate the danger that one prospective juror's biased statements might infect another prospective juror.  See Motion at 8.  They contend that the questionnaires will help counsel to stipulate to the striking of certain individuals for cause and to concentrate on those venire members who have a real potential to be on the jury.  See Motion at 8.  The Plaintiffs assert that individual questioning outside of the presence of other prospective jurors is necessary on certain limited topics and that such questioning will encourage jurors to be candid about subjects which they

may be unwilling to discuss in front of the group.  <u>See</u> Motion at 9.  Furthermore, the Plaintiffs contend that the Court should permit direct attorney participation in the questioning of prospective jurors.  <u>See</u> Motion at 10.  They argue that counsel are in the best position to effectively question the prospective jurors and that a generalized judicial inquiry is not sufficient to evaluate whether prospective jurors have experience which may make them biased against a party.  <u>See</u> Motion at 10. They further assert that venire members feel pressured to give judges "appropriate" responses, but will not feel similarly compelled to answer in that manner when an attorney poses a question. Motion at 10.

The Court held a hearing on April 2, 2012.  At the hearing, the Court stated that it did not have an issue with jury questionnaires, but informed the parties that usually such forms need to be mailed out six weeks before trial.  <u>See</u> Transcript of Hearing at 19:17-23 (April 2, 2012)(Court)("April 2, 2012 Tr.").  The Court noted that the proposed questionnaire was not particularly complex and that the jurors could fill them out the morning of the trial.  <u>See</u> April 2, 2012 Tr. at 19:24-20:2 (Court).  The Defendants said that the parties do not have the luxury of a two-day voir dire of the prospective jurors and that the Plaintiffs' proposed jury selection process would likely take a significant amount of time.  <u>See</u> April 2, 2012 Tr. at 21:1-5 (Levy).  The Court noted that generally it is fairly liberal with voir dire and gives more than its colleagues.  <u>See</u> April 2, 2012 Tr. at 21:6-11 (Court).  The Court suggested generally that the Court will ask some questions, that the parties are free to ask some questions, and that, if there are any sensitive issues, the parties can question individuals at the bench.  <u>See</u> April 2, 2012 Tr. at 21:12-17 (Court).  The Court also suggested that it could use the questionnaire to determine whether there were some issues that needed to be explored more fully at the bench.  <u>See</u> April 2, 2012 Tr. at 21:17-22 (Court).  The Plaintiffs responded that the Court's proposal, mixing the normal voir dire process with the proposed

voir dire process, was acceptable and that the purpose of the questionnaire was to shorten voir dire in the manner that the Court suggested.  See April 2, 2012 Tr. at 21:23-22:7 (Kennedy).  The Defendants also asserted that they found the Court's proposed process, with a general venire and some individualized questioning, acceptable.  See April 2, 2012 Tr. at 22:10-13 (Court, Levy).  The Court then asked about using the questionnaire and the Defendants responded that they did not have a problem with the prospective jurors receiving it as soon as they arrived.  See April 2, 2012 Tr. at 22:14-23 (Court, Levy).  The Court indicated that it would use the questionnaire and that it would follow the outline of voir dire discussed at the hearing.  See April 2, 2012 Tr. at 29:21-23 (Court).

## LAW REGARDING JURY SELECTION

To be meaningful, the adequacy of voir dire examination must allow a party an opportunity to make reasonably intelligent use of peremptory challenges and challenges for cause.  See United States v. Rucker, 557 F.2d 1046, 1049 (4th Cir. 1977).  "[V]oir dire is within the sound discretion of the trial court, and the court's exercise of that discretion will not be disturbed, absent a clear showing of abuse."  United States v. Whitt, 718 F.2d 1494, 1497 (10th Cir. 1983).  See United States v. Gibbons, 607 F.2d 1320, 1330 (10th Cir. 1979)("The trial court has broad discretion in conducting the voir dire examination.").  "[D]istrict courts have broad discretion in fashioning the method of exercising peremptory challenges, and the jury selection procedure in general."  United States v. Morris, 623 F.2d 145, 151 (10th Cir. 1980)(citations omitted).  The Court has previously approved of juror questionnaires in a case where sensitive questions regarding sexual abuse would need to be asked of prospective jurors.  See United States v. Vigil, No. 05-2051, 2007 WL 505687, at *4 (D.N.M. Jan. 10, 2007)(Browning, J.)(noting that the Court used an extensive juror questionnaire); United States v. Sandoval, No. 04-2362, 2006 WL 1304955, at *3 (D.N.M. Feb. 1, 2006)(Browning, J.)("The proposed questionnaire will aid the Court and the parties in obtaining and receiving

information that will be helpful for the exercise of early challenges for cause so that prospective

jurors do not have to be subjected unnecessarily to questioning in Court in voir dire.").

## ANALYSIS

The Court will grant in part and deny in part the Motion. Neither party objected to the

Court's compromise voir dire process. Accordingly, the Court will permit the use of the proposed

juror questionnaire and will allow individualized questioning as necessary. The Court will not

require individualized voir dire of each prospective juror.

The Plaintiffs have provided a sound basis for modifying the voir dire process, given the

sensitive and complex nature of the issues in the case as well as the time constraints noted at the

hearing. The case involves some sensitive issues regarding governmental authority, drug use, and

the health risks associated with the presence of drugs. The Court and counsel will need to ask the

prospective jurors sensitive questions regarding: (i) their views on drug use or abuse; (ii) whether

they or family members have used illegal drugs; (iii) whether they have ever been cited or

prosecuted for possessing illegal drugs or paraphernalia; and (iv) whether their homes or family

member's homes have been cited for violations of the housing code. The Defendants did not object

to any of the questions listed in the questionnaire, and originally opposed the proposed jury selection

process out of concern for efficiency and time constraints. The Court believes that having

prospective jurors complete the juror questionnaires before voir dire will aid the Court and the

parties "in obtaining and receiving information that will be helpful for the exercise of early

challenges for cause so that prospective jurors do not have to be subjected unnecessarily to

questioning in Court in voir dire." United States v. Sandoval, 2006 WL 1304955, at *3.

Furthermore, the questionnaire will aid judicial economy by allowing the Court to use the limited

time available for voir dire to more fully explore any issues revealed within the questionnaires. The

questionnaire will aid the Court and the parties in more effectively determining the existence and substance of challenges for cause, as well as assisting the parties in the exercise of their peremptory challenges.  Accordingly, the Court finds that the juror questionnaire provides the Court with a useful tool to more easily facilitate voir dire.

The Court will not, however, permit individualized questioning of each prospective juror. At the beginning of the voir dire, the Court will tell jurors that, if the have anything they want to discuss at the bench, they should feel free to so indicate and that the Court has a means of muting the sound so that only the attorneys and the Court would hear the discussion.  The Court will then permit, in conformance with its usual voir dire practices, limited questioning of individual jurors on specific issues and on any issues from the questionnaire which may need to be more fully explored. The Court's practice is to allow counsel to ask questions of the venire at large and to members individually on specific topics, where their answer might raise a red flag or indicate possible bias. On the other hand, questioning each juror at the bench on a wide variety of topics would be time-consuming and defeat whatever judicial efficiencies are gained through the use of the questionnaire. The Court is convinced that some at large questioning engenders useful discussions and actually can ferret out bias and prejudice; further follow-up quietly at the bench can alleviate further concerns or demonstrate that there is prejudice.  As the parties and the Court discussed at the hearing, the Court will ask some general questions and will permit counsel to ask some questions to the entire venire.  See April 2, 2012 Tr. at 21:12-17 (Court).  Besides getting some basic information from them -- scheduling problems, knowledge of parties and attorneys, prior jury service -- the Court attempts to ask some questions of each prospective juror to make them comfortable talking in a courtroom, so that when the Court turns over the questioning to the lawyers, the venire is used to talking in a courtroom, which can be a strange setting for most lay persons.  If, after that, issues

remain with respect to certain prospective jurors' answers or more sensitive lines of inquiry, the Court will permit further questioning at the bench. The Court's goals are to make voir dire as efficient as possible and to permit the parties to inquire into potential biases which they feel may lead to an impartial jury. The process outlined at the hearing and discussed in this memorandum opinion and order will facilitate those goals. The Court does not believe that individualized questioning every potential juror will add any tangible benefits to this process. Accordingly, the Court will deny the Motion with respect to the request for individualized questioning of each prospective juror.

**IT IS ORDERED** that the requests in the Plaintiff's [sic] Motion and Memorandum of Law to Adopt Jury Selection Procedures to Impanel an Impartial Jury, filed March 26, 2012 (Doc. 106), are granted in part and denied in part. The Court will use the Plaintiffs' proposed juror questionnaire, but because of the nearness of trial will not mail it out,[2] but will hand it to the jury panel for completion on the morning of trial. The Court will, however, limit individualized questioning of prospective jurors to specific issues raised in the individual's response to a question or to the questionnaire. The Court will also permit counsel for both parties to pose questions to the venire.

_____
UNITED STATES DISTRICT JUDGE

---

[2]Generally, the Court needs to receive a juror questionnaire six weeks before trial to mail it to prospective jurors.

*Counsel:*

Joseph P. Kennedy
Shannon L. Kennedy
Kennedy Law Firm
Albuquerque, New Mexico

*Attorneys for the Plaintiff*

Kathryn Levy
City of Albuquerque Legal Department
Albuquerque, New Mexico

*Attorneys for the Defendants*