## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

KEVIN LOWERY, on his behalf and
on behalf of similarly situated persons,

        Plaintiff,

JUDY LOVATO, DANNY GABALDON,
BARBARA THOMAS, each on his/her behalf
and on behalf of similarly situated persons,

        Plaintiffs-in-Intervention,

vs.                                        No. CIV 09-0457 JB/WDS

CITY OF ALBUQUERQUE, MARTIN CHAVEZ,
in his individual capacity as mayor of the City of
Albuquerque; RAY SCHULTZ, in his individual
capacity as chief of police of the City of Albuquerque
Police Department; JOHN OLSTEAD; and MARK
CRANDALL, and JOHN DOE POLICE OFFICERS,

        Defendants,

MICHELLE WALL, LARRY MOYA,

        Defendants-in-Intervention.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Motion Requesting to Be Included as a Co-Plaintiff in This Class Law Suit [sic] Against the City of Albuquerque, filed February 27, 2012 (Doc. 104)("Motion"). The Court held a hearing on April 2, 2012. The primary issue is whether the Court should permit John M. Dzula and Joanna Janisz[1] to join in this class action. The Court will deny the Motion. The Court does not believe that Dzula and Janisz are class members, and their

---

[1]At times Janisz is also referred to as "Joanna Dzula," Motion at 10; however, because she signed the Motion as "Joanna Janisz," the Court will refer to her as Janisz.

claims will prejudice the class or could confuse the jury.  Furthermore, even if Dzula and Janisz are class members, they have provided the Court with no arguments to justify allowing them to intervene or become named Plaintiffs in this action.

## FACTUAL BACKGROUND

The Court has previously reviewed the facts of this case in its Memorandum Opinion and Order, filed March 31, 2011 (Doc. 79)("March 31, 2011 MOO"), which granted summary judgment on the issue whether exigent circumstances existed to seize Plaintiffs Danny Gabaldon, Judy Lovato, Barbara Thomas and K. Lowery's homes, and in its Memorandum Opinion and Order, filed April 13, 2011 (Doc. 83)("April 13, 2011 MOO"), which certified the class action.  The Court adopts the facts related to the class claims for the purposes of this memorandum opinion and order.

### 1.      City Ordinances.

In 2004, Defendant City of Albuquerque, New Mexico, passed the Clean Up of Laboratory Sites Ordinance, Ord. 36-2004 (hereinafter "Ord. 36-2004").  The purpose of the ordinance is to require remediation of clandestine drug laboratory sites "to assure the health, safety and welfare of the community."  Ord. 36-2004 § 11-1-1-42.  See Plaintiffs Thomas and Gabaldon's Motion and Memorandum in Support of Summary Judgment ¶ 1, at 2, filed July 13, 2010 (Doc. 36)("Thomas' and Gabaldon's Motion"); Defendants' Response to Plaintiffs Thomas and Gabaldon's Motion and Memorandum in Support of Summary Judgment ¶ 1, at 1, filed August 29, 2010 (Doc. 52)("Thomas and Gabaldon Response")(admitting this fact).  Clandestine drug laboratories are defined in the ordinance as "property on which [a controlled substance] is being manufactured or on which there is an attempt to manufacture, or where a person is arrested for having on any property any chemicals or equipment used in manufacturing [a controlled substance]."  Ord. 36-2004 § 11-1-1-42.  See Thomas' and Gabaldon's Motion ¶ 2, at 2 (setting forth this fact); Thomas and Gabaldon Response

¶ 2, at 2 (admitting this fact). The Substandard Building Ordinance, Ord. 34-1985 (hereinafter "Ord. 34-1985") states that any building or portion of a building where there exists an inadequate sanitation condition "to the extent that [the condition] endangers the life, limb, health, property, safety or welfare of the public or occupants thereof shall be deemed and declared a SUBSTANDARD BUILDING." Ord. 34-1985 § 14-3-4-1. See Thomas' and Gabaldon's Motion ¶ 5, at 2 (setting forth this fact); Thomas and Gabaldon Response ¶ 5, at 2 (admitting this fact). Substandard housing means that there is an immediate risk of harm to the resident. See Deposition of Mark Crandall at 25:1-25 (taken April 14, 2010), filed August 29, 2010 (Doc. 52-4). Designation of a house as substandard through "posting" or "red tagging" requires same-day eviction of all residents. Ord. 34-1985 § 14-3-5-3(D); Crandall Depo. at 29:18-24; Thomas' and Gabaldon's Motion ¶ 6, at 3 (setting forth this fact); Thomas and Gabaldon Response ¶ 6, at 3 (admitting this fact). Residents and homeowners who re-enter a property posted as substandard without a permit commit a misdemeanor offense. See Ord. § 14-3-5-3(D); Thomas' and Gabaldon's Motion ¶ 6, at 3 (setting forth this fact); Thomas and Gabaldon Response ¶ 6, at 3 (admitting this fact).

When a property is deemed substandard because of drug contamination, occupants and homeowners are barred from entering the property until the homeowners pay for drug contaminant testing and remediation, which can cost thousands of dollars. See Thomas' and Gabaldon's Motion ¶ 12, at 3 (setting forth this fact); Thomas and Gabaldon Response ¶ 12, at 3 (admitting this fact). Residents and homeowners have an automatic right to reenter their homes upon an appeal. See Ord. 34-1986 § 14-3-5-4(D); Thomas' and Gabaldon's Motion ¶ 13, at 3 (setting forth this fact); Thomas and Gabaldon Response ¶ 13, at 3 (admitting this fact).

2.      **Albuquerque Police Department's Criminal Nuisance Abatement Team**
        **Practices.**

City Inspector Joseph Martinez wrote the initial draft of the Drug Lab Ordinance.  See
Thomas' and Gabaldon's Motion ¶ 3, at 2 (citing Plaintiffs' Motion for Class Certification ¶ 4, at
3, filed June 4, 2010 (Doc. 32)("Motion for Class Certification")(citing Deposition of Joseph
Martinez at 64:12-16 (taken March 23, 2010), filed June 3, 2010 (Doc. 32-3)); Thomas and
Gabaldon Response ¶ 3, at 2 (not controverting this fact).  Martinez included language about
possible contamination from drug use based on his belief that drug use could lead to property
contamination.  See Thomas' and Gabaldon's Motion ¶ 3, at 2 (citing Motion for Class Certification
¶ 4, at 3 (citing Martinez Depo. at 94:2-13)); Thomas and Gabaldon Response ¶ 3, at 2 (not
controverting this fact).  Martinez' belief was not founded on scientific evidence.  See Thomas' and
Gabaldon's Motion ¶ 3, at 2 (citing Motion for Class Certification ¶ 4, at 4 (citing Martinez Depo.
at 94:9-13)); Thomas and Gabaldon Response ¶ 3, at 2 (not controverting this fact).

Martinez enforced the draft ordinance he had written and not the ordinance that the City of
Albuquerque put into law.  See Thomas' and Gabaldon's Motion ¶ 3, at 2 (citing Motion for Class
Certification ¶ 5, at 4 (citing Martinez Depo. at 69:11-18)); Thomas and Gabaldon Response ¶ 3,
at 2 (not controverting this fact).  Martinez did not read the final version of the Drug Lab Ordinance
that the City of Albuquerque passed until about a year after it had been in effect.  See Thomas' and
Gabaldon's Motion ¶ 3, at 2 (citing Motion for Class Certification ¶ 5, at 4 (citing Martinez Depo.
at 69:1-6)); Thomas and Gabaldon Response ¶ 3, at 2 (not controverting this fact).  Members of the
Nuisance Abatement Team enforced Martinez' draft and not the ordinance that the City of
Albuquerque gave legal effect.  See Thomas' and Gabaldon's Motion ¶ 3, at 2 (citing Motion for
Class Certification ¶ 5, at 4 (citing Martinez Depo. at 69:19-25)); Thomas and Gabaldon Response

¶ 3, at 2 (not controverting this fact).

Some members of the Nuisance Abatement Team evicted residents and homeowners from their home based on the belief that drug use was occurring in the home.  See Thomas' and Gabaldon's Motion ¶ 3, at 2 (citing Motion for Class Certification ¶ 6, at 4 (citing Wall Depo. at 33:4-7; Crandall Depo. at 41:21-42:17; Moya Depo. at 16:23-17:5)); Thomas and Gabaldon Response ¶ 3, at 2 (not controverting this fact).  Possible contamination because of drug use in a home was, in some cases, the sole basis for "red tagging" a home.  Thomas' and Gabaldon's Motion ¶ 3, at 2 (citing Motion for Class Certification ¶ 7, at 4 (citing Crandall Depo. at 40:22-25)).  Some members of the Nuisance Abatement Team posted houses where there was evidence that drug use had occurred, even if the drug use was a onetime occurrence.  See Thomas' and Gabaldon's Motion ¶ 3, at 2 (citing Motion for Class Certification ¶ 7, at 4 (citing Moya Depo. at 16:1-12; id. at 19:1-4)).

Members of the Nuisance Abatement Team knew that the Drug Lab Ordinance applied only to drug laboratories and expressed concerns that the Drug Lab Ordinance did not apply to drug use. See Thomas' and Gabaldon's Motion ¶ 3, at 2 (citing Motion for Class Certification ¶ 8, at 4 (citing Wall Depo. at 31:3-12; Moya Depo. at 4:10-22, 5:1-23, 6:21-24)); Thomas and Gabaldon Response ¶ 3, at 2 (not controverting this fact).  When a member of the Nuisance Abatement Team expressed concern that the Drug Lab Ordinance did not extend to evictions based on drug use, he was told that the Substandard Building Ordinance could be used to deem a house substandard based on drug use. See Thomas' and Gabaldon's Motion ¶¶ 3-4, at 2 (setting forth this fact)(citing Motion for Class Certification ¶ 8, at 4 (citing Wall Depo. at 31:21-32: 20; Moya Depo. at 6:2-6)); Thomas and Gabaldon Response ¶ 4, at 3 (not controverting this fact).  Members of the Nuisance Abatement Team were told that, if they found drug paraphernalia, they should post notices on those homes

because there might be contamination.  See Thomas' and Gabaldon's Motion ¶ 3, at 2 (citing Motion for Class Certification ¶ 8, at 4 (citing Moya Depo. at 16:8-13)); Thomas and Gabaldon Response ¶ 3, at 2 (not controverting this fact).  Inspectors have used the Drug Lab Ordinance to evict suspected drug users from their homes.  See Motion for Class Certification ¶ 11, at 5 (citing Crandall Depo. at 24:6-23; Wall Depo. 33:4-7); Thomas and Gabaldon Response ¶ 3, at 2 (not controverting this fact). On at least one occasion, one inspector did not wear protective clothing or gear when conducting a search of a property.

### 3.   Dzula and Janisz.

Dzula has been an Albuquerque property owner since 1978.  See Motion at 1.  He alleges that the City of Albuquerque forced him to sell his Albuquerque properties at 1715 Arno Street Southeast, 423 High Street Southeast, and 417 High Street Southeast.  See Motion at 3.  Dzula asserts that Martinez was involved in a "property grabbing scam," and that he used "condemnation, [f]alse housing code violation prosecution[s], red tagging, intimidation, [a]nd harassment of litigant[,] his spouse[,] and his tenants, as a tool[] to force Litigant and his spouse to sell their property for 15 cents on the dollar."  Motion at 3-4 (emphasis original).  He alleges that Martinez falsely accused tenants in one apartment of drug trafficking, but that Dzula never personally observed drug trafficking in that apartment when he spent ten nights watching activity there. See Motion at 4.  Dzula asserts that Martinez gained access to his apartments and took photographs which Martinez contended show exposed wires and a "Natural Gas Flex tube" connecting the toilet. Motion at 4.  When Dzula confronted Martinez about why Martinez condemned the building, Martinez replied that "important people" were interested in Dzula's property.  Motion at 5.  Dzula then filed a complaint against Martinez.  See Motion at 5.  The Mayor's Office refused to discipline Martinez, and Dzula states that he was subject to retaliation, including the changing of his court

date, which resulted in his arrest for failure to appear.  <u>See</u> Motion at 5.  He asserts that, while he was in jail, Martinez red-tagged the rest of Dzula's buildings without inspecting the interiors.  <u>See</u> Motion at 5-6.  Dzula alleges that the 417 High Street property had been inspected a week earlier and been approved.  <u>See</u> Motion at 6.  Dzula states that within two days of the red-tagging of his building, an individual named Paul Chavez offered $40,000.00 for a property which had been appraised at $650,000.00.  <u>See</u> Motion at 6.  Dzula states that P. Chavez was later seen at a party for Benjamin Chavez, a City Attorney, and that B. Chavez owns the properties adjacent to Dzula's.  <u>See</u> Motion at 6.  He asserts that, after he filed a second complaint against Martinez, Martinez began to harass his tenants by red-tagging the tenants' vehicles and threatening to arrest them.  <u>See</u> Motion at 7.

## PROCEDURAL BACKGROUND

On April 7, 2009, K. Lowery, on his behalf and on behalf of similarly situated persons, filed the Class Action Complaint for Injunctive Relief, Declaratory Relief and for Recovery of Damages Resulting from a Deprivation of Constitutional Rights in the Second Judicial District of New Mexico.  <u>See</u> Doc 1-1 (dated April 7, 2009), filed May 8, 2009 ("Complaint").  Defendants City of Albuquerque, Martin Chavez, Ray Schultz, John Olstead, Crandall, and John Doe Police Officers removed the matter on May 8, 2009.  <u>See</u> Notice of Removal, filed May 8, 2009 (Doc. 1).  The Notice of Removal asserts that the Court has jurisdiction over K. Lowery's federal law claims under 28 U.S.C. § 1331 and that removal is permitted under 28 U.S.C. § 1441.  <u>See</u> Notice of Removal ¶ 2, at 1.

The Complaint contains ten counts.  <u>See</u> Complaint at 4-14.  Count I alleges John Doe Police Officers deprived K. Lowery of his Fourth-Amendment rights, because they seized his person without probable cause.  <u>See</u> Complaint ¶ 22, at 4.  Count II states that the Nuisance Abatement

Team inspector and John Doe Police Officers violated K. Lowery's Fourth-Amendment rights when they entered into the curtilage of his home.  See Complaint ¶27, at 5.  Count III alleges that the police and city inspectors entry and search of the home was unreasonable, and therefore a deprivation of K. Lowery's Fourth-Amendment rights.  See Complaint ¶ 32, at 5.  Count IV alleges that the Defendants violated K. Lowery's Fourth-Amendment rights through unreasonable seizure of his home.  See Complaint ¶ 38, at 6.  In Count V, K. Lowery contends that Crandall and John Doe Police Officers seized his property without procedural due process in violation of the Fourteenth Amendment.  See Complaint ¶ 44, at 6.  Count V is an alternative to Count IV, alleging that Crandall and John Doe Police Officers afforded him inadequate pre-deprivation procedure.  See Complaint at 6-7.  Count VI alleges a procedural due-process violation based on the Defendants' failure to release K. Lowery's property to him upon his filing a notice of appeal.  See Complaint ¶ 51, at 7.  Count VII is a Fourteenth-Amendment claim related to requiring environmental testing without sufficient factual basis.  See Complaint ¶ 55, at 8.  Count VIII is a Fourteenth-Amendment claim related to overall use of the Nuisance Abatement Team to deprive property owners of property rights and a request to declare the Substandard Building Ordinance unconstitutional.  See Complaint ¶ 74, at 11.  Count IX alleges that the ordinance violates the New Mexico State Constitution and asserts tort claims on behalf of K. Lowery against the Defendants, including torts of false imprisonment for his detention and trespass for entry into his curtilage and home, and seizure of his home.  See Complaint ¶ 77, at 12.  Count X alleges that the Defendants have a custom, practice, or policy of intentionally violating civil or constitutional rights.  See Complaint ¶ 79, at 12.  Count X also seeks to represent all individuals or corporations whose property the City of Albuquerque's Nuisance Abatement Team, either directly or through its enforcement of the housing code, seized or deprived of the benefit of use, from three years of the filing of this Complaint until the alleged

-8-

policy ceases, and seeks certification of a class for Counts IV through X.  <u>See</u> Complaint ¶ 82, at 12.

On August 11, 2009, Gabaldon, Lovato, and Thomas filed a Complaint in Intervention.  <u>See</u> Complaint in Intervention, filed August 11, 2009 (Doc. 11).  On August 10, 2010, K. Lowery, Lovato, Gabaldon, and Thomas, on behalf of themselves and the class, filed an Amended Complaint. <u>See</u> Amended Class Action Complaint for Injunctive Relief, Declaratory Relief and for Recovery of Damages Resulting from a Deprivation of Constitutional Rights, filed August 10, 2010 (Doc. 48, at 6-16)("Amended Complaint").   The Amended Complaint modified the Complaint to (i) incorporate Gabaldon, Lovato and Thomas into Counts IV, V, VII, VIII, IX, and X, <u>see</u> Amended Complaint at 6-16; (ii) add Lovato to Count VI, <u>see</u> Amended Complaint at 9; and (iii) add facts specific to Gabaldon, Lovato, and Thomas, <u>see</u> Amended Complaint at 2-6.

On June 4, 2010, K. Lowery, Lovato, Gabaldon, and Thomas moved for class certification. In a hearing on September 14, 2010, the parties agreed that the requirements of rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure were satisfied.  <u>See</u> Fed. R. Civ. P. 23;  Transcript of Hearing at 4:11-12 (September 14, 2010)(Kennedy)("Sept. 14, 2010 Tr.").[2]  The Defendants reserved the right to challenge the class at any time.  <u>See</u> Sept. 14, 2010 Tr. at 7:11-21 (Court, Levy).  The parties agreed that the Defendants did not admit that there was an unconstitutional policy and that there was no admission of liability.  <u>See</u> Sept. 14, 2010 Tr. at 6:15-21 (Levy).  The Court orally granted the motion for class certification at the hearing, <u>see</u> Sept. 14, 2010 Tr. at 9:2-13 (Court), and entered a written order approving a class action notice and setting a trial for April 18,

---

[2]The Court's citations to the transcripts of the September 14, 2010 and April 2, 2012 hearings refer to the court reporter's original, unedited versions.  Any final transcripts may contain slightly different page and/or line numbers.

2011, <u>see</u> Order Approving Class Action Notice and Trial Setting, filed December 14, 2010 (Doc. 67).  On March 31, 2011, the Court entered its March 31, 2011 MOO and, focusing on the issue "whether an objective observer would believe that the violations for which the Plaintiffs were cited posed an immediate threat to the lives or safety of the occupants," found that "the Defendants failed to provide evidence that the presence of drugs or drug paraphernalia posed an immediate threat to the life or safety of the occupants of the seized homes that would create an exigent circumstance." March 31, 2011 MOO at 70-71.  The Court then entered its April 13, 2011 MOO explaining why it granted the Motion for Class Certification and why the proposed class satisfied the rule 23 requirements.  <u>See</u> Doc. 83, at 1-2.  The Court certified a class of all individuals or corporations whose property was seized without court order, or who were deprived of their property for suspected drug use and subsequent to the City of Albuquerque's Criminal Nuisance Abatement Team designating their property as substandard, from three years before Lowery filed his Complaint, until the policy ceases.  <u>See</u> April 13, 2011 MOO at 26-27.  The Court also: (i) designated K. Lowery, Lovato, Gabaldon, and Thomas as the class representatives; and (ii) appointed the Kennedy Law Firm as class counsel.  <u>See</u> April 13, 2011 MOO at 40.  On January 24, 2012, the Court rejected a proposed settlement because of fairness concerns, <u>see</u> Memorandum Opinion and Order at 2, filed January 24, 2012 (Doc. 96)("Jan. 24, 2012 MOO"), and the parties began to prepare for trial.

On February 27, 2012, Dzula and Janisz filed their Motion.  Dzula and Janisz ask to be included in this case as "Co-Plaintiff[s]."  Motion at 1.  Dzula asserts that he is similarly situated to all other class members "named as a Plaintiff in this Case."  Motion at 1.  They assert that the "plaintiffs in this case represent only the tip of the Iceberg Of magnitude of people that w[ere] victimized in this multi-million dollar Property grabbing scam."  Motion at 2.  Dzula states that he was and is being victimized "by certain actions violating his <u>Constitutional rights</u>, his civil <u>rights</u>,

his right to <u>Equal protection under the Law</u>, and Wrongful application of the <u>imminent</u> [sic] <u>Statutes</u> by, City of Albuquerque's Housing Code & Abatement unit, during that time that Martin Chavez Was a City of Albuquerque's Mayor." Motion at 2 (emphasis original). Dzula asserts that he was not contacted or informed that this lawsuit was filed. <u>See</u> Motion at 3. He represents that he contacted the Kennedy Law firm and that it declined to add him as a class member. <u>See</u> Motion at 3. Dzula contends that his "financial loss is enormous" and that he lost everything. Motion at 9. He asks that he and Janisz be allowed to: (i) join the class action as class members and as "Co-Plaintiffs"; and (ii) present their testimony, written evidence, and pictures during the trial. Motion at 10. Neither the Plaintiffs nor the Defendants filed a response to the Motion.

The Court held a hearing on April 2, 2012. At the hearing, Dzula asserted that he is similarly situated to the class members, because the City of Albuquerque has enforced its policies in a way that violates his civil rights. <u>See</u> Transcript of Hearing at 47:22-48:3 (Dzula)("April 2, 2012 Tr."). He stated that he did not receive a class notice and was unaware of this lawsuit until he saw an article in the newspaper. <u>See</u> April 2, 2012 Tr. at 48:11-15 (Court, Dzula). Assuming that Dzula and Janisz are class members, the Court informed them that the Kennedy Law Firm would represent their interests and asked whether they wanted something more. <u>See</u> Tr. at 48:16-24 (Court). Dzula responded that he contacted the Kennedy Law Firm and that he was informed he was not part of the class. <u>See</u> Tr. at 48:24-49:5 (Dzula). He argued that he has a well-documented case, having filed seven complaints against the City of Albuquerque, and that his case is eminent domain gone wrong. <u>See</u> Tr. at 49:17-25 (Dzula). He contended that his buildings were condemned, that he was selectively prosecuted, and that he was forced to sell his properties to members or relatives of members of the city government. <u>See</u> Tr. at 49:24-50:4 (Dzula). Dzula said that he has heard a lot about drugs, and that, from his experience, drugs were used as an excuse to gain access to inspect

apartments.  See Tr. at 50:9-20 (Dzula).  He represented that the inspectors accused one of his tenants of dealing drugs and that he personally observed that tenant for two weeks without seeing any evidence of drug dealing.  See Tr. at 50:21-51:2 (Dzula).  Dzula contended that the inspectors would focus on things like weather stripping or electrical outlets, and that an inspector stated that very important people were interested in his property.  See Tr. at 51:3-19 (Dzula).  He stated that the events of which he complained took place between 2004 and 2008.  See Tr. at 52:7-8 (Dzula).  He also represented that he had been in state court regarding these issues.  See Tr. at 52:8-19 (Dzula).  Janisz stated that she had the same experience with inspectors.  See Tr. at 53:2-3 (Janisz).  She asserted that her tenants had complained of a broken air conditioning unit and of a lack of window screens, but that after an inspector approved her repairs, Martinez condemned the building.  See Tr. at 53:4-22 (Janisz).  She stated that Martinez informed her that the foundation of the roof was in poor condition and that it would be easier to destroy the building than fix it.  See Tr. at 53:22-25 (Janisz).

The Court then asked the Kennedy Law firm whether Dzula and Janisz were class members.  See Tr. at 54:10 (Court).  Joseph Kennedy, of the Kennedy Law Firm, responded that they are not members of the class, because of the April 7, 2006 beginning date for the class.  See Tr. at 54:12-14 (Kennedy).  Mr. Kennedy asserted that, to avoid statute-of-limitations issues, they chose to limit the class to those who were injured after April 7, 2006.  See Tr. at 54:14-17 (Kennedy).  Mr. Kennedy also emphasized that the class was limited to those persons who were evicted from their homes or had their homes seized because of the drug contamination policy.  See Tr. at 54:17-22 (Kennedy).  He also stated that Dzula's and Janisz' problems were potentially claims processing issues, which would arise at the end of the case when they were attempting to distribute the class fund.  See Tr. at 54:24-55:1 (Kennedy).  Mr. Kennedy asserted that he did not believe Dzula or Janisz received a

-12-

class notice, because their names were not included among those with invoices for remediation with the environmental testing companies.  See Tr. at 55:2-10 (Court, Kennedy).  Mr. Kennedy suggested that the Court should appraise Dzula and Janisz of their rights and the risk of continuing to believe they are part of the class, if they are not.  See Tr. at 55:14-16 (Kennedy).  He stated that he could not determine, without having seen their documentation, definitively whether they are members of the class or not.  See Tr. at 55:16-56:2 (Kennedy).  The Defendants stated that they saw a statute of limitations problem and asserted that, on the facts recited to the Court, the Defendants did not believe that Dzula or Janisz are a part of the class.  See Tr. at 56:8-16 (Levy).  Dzula asserted that his claims took place between 2004 and 2007 and that his tenants continue to be harassed.  See Tr. at 56:18-57:6 (Dzula).  Dzula argued that drugs are involved because his tenants are being accused of dealing drugs if they do not invite the inspectors into their apartments.  See Tr. at 60:10-13 (Dzula).

## LAW REGARDING CLASS REPRESENTATIVES

Rule 23(a)(4) requires that "representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  This requirement protects the due-process interests of unnamed class members, who are bound by any judgment in the action.  See Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 379 n.5 (1996)(characterizing adequacy of representation as a constitutional requirement); Lile v. Simmons, 143 F.Supp.2d 1267, 1277 (D. Kan. 2001)("Due process requires that the Court 'stringently' apply the competent representation requirement because class members are bound by the judgment (unless they opt out), even though they may not actually be aware of the proceedings.").  "The requirement of fair and adequate representation is perhaps the most important of the criteria for class certification set forth in Rule 23(a) . . . ."  Miller ex rel. S.M. v. Bd. of Educ., 455 F.Supp.2d 1286, 1294 (D.N.M. 2006)(Armijo, J.).  See Cobb v. Avon Prods.,

Inc., 71 F.R.D. 652, 654 (W.D. Pa. 1976)("Adequacy of the representative is of monumental importance since representation demands undiluted loyalty to the class interests . . . ."). The United States Court of Appeals for the Tenth Circuit has identified two questions relevant to the adequacy of representation inquiry: (i) whether the named plaintiffs and their counsel have any conflicts with other class members; and (ii) whether the named plaintiffs and their counsel will vigorously prosecute the action on behalf of the class. See Rutter & Wilbanks Corp. v. Shell Oil Co., 314 F.3d at 1187-88. In considering this second question, the experience and competence of the attorney representing the class may inform the court's analysis. See Lopez v. City of Santa Fe, 206 F.R.D. at 289-90.

The Supreme Court of the United States "has repeatedly held [that] a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." E. Tex. Motor Freight Sys. Inc. v. Rodriguez, 431 U.S. 395, 403 (1977)(quoting Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208, 216 (1974)). Courts have found that intra-class conflicts "may negate adequacy under Rule 23(a)(4)." Langbecker v. Elec. Data Sys. Corp., 476 F.3d 299, 315 n.28 (5th Cir. 2007)(holding that the district court erred in certifying a class without evaluating intra-class conflicts). See Pickett v. Iowa Beef Processors, 209 F.3d 1276, 1280 (11th Cir. 2000)(finding that representation was inadequate where the class included those "who claim harm from the very acts from which other class members benefitted"); Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 344 (4th Cir. 1998)(holding that the current franchisees who had an interest in the continued viability of the franchiser had an inherent conflict with former franchisees whose only interest was in the maximization of damages); Alston v. Va. High Sch. League, Inc., 184 F.R.D. 574, 579 (W.D. Va. 1999)(holding that a class of all high school female athletes could not be certified -- even if the alleged conduct of the defendant school system

was discriminatory -- when some female athletes did not share the same goals or interests as the named female plaintiffs, because those unnamed female athletes were satisfied with and/or benefitted from the alleged discriminatory treatment).

In Gonzales v. City of Albuquerque, No. 09-0520, 2010 WL 4053947 (D.N.M. Aug. 21, 2010)(Browning, J.), the Court found that rule 23(a)(4) of the Federal Rules of Civil Procedure was not satisfied, because there was a conflict of interest between the former employees and current employees in the proposed class. See 2010 WL 4053947, at *14. The Court noted that the nine named plaintiffs in the class action were all former employees. See Gonzales v. City of Albuquerque, 2010 WL 4053947, at *15. The Court also noted that the current and former employees sought different remedies, because the former employees sought reinstatement and backpay, while the current employees did not seek either. See Gonzales v. City of Albuquerque, 2010 WL 4053947, at *15. The Court found that the interests of the named plaintiffs were likely opposed to the interests of many of the current employees in the class. See Gonzales v. City of Albuquerque, 2010 WL 4053947, at *15. Accordingly, the Court found that the class failed to satisfy rule 23(a)(4). See Gonzales v. City of Albuquerque, 2010 WL 4053947, at *170.

On the other hand, "only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status. Beyond that straightforward proposition, defining the level of antagonism or conflict that should preclude class certification is a more difficult proposition." 7A C. Wright, A. Miller & M. Kane, Federal Practice & Procedure § 1768, at 389-93 (3d ed. 2005). See Lane v. Page, 272 F.R.D. 558, 579 (D.N.M. 2011)(Browning J.). "Though a plaintiff cannot be an adequate representative if he or she has a conflict of interest with class members, not every potential disagreement between a class representative and the class members will stand in the way of a class suit." 1 A. Conte & H. Newberg, Newberg on Class Actions § 3:26,

at 433-34 (4th ed. 2002).

## LAW REGARDING MOTIONS TO INTERVENE

Rule 24 provides for intervention of right or permissive intervention on timely motion:

(a)     **Intervention of Right.** On timely motion, the court must permit anyone to intervene who:

    (1)     is given an unconditional right to intervene by a federal statute; or

    (2)     claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

(b)     **Permissive Intervention.**

    (1)     *In General*. On timely motion, the court may permit anyone to intervene who:

        (A)     is given a conditional right to intervene by a federal statute; or

        (B)     has a claim or defense that shares with the main action a common question of law or fact.

    (2)     *By a Government Officer or Agency*. On timely motion, the court may permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on:

        (A)     a statute or executive order administered by the officer or agency; or

        (B)     any regulation, order, requirement, or agreement issued or made under the statute or executive order.

    (3)     *Delay or Prejudice*. In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

Fed. R. Civ. P. 24(a) and (b) (emphasis original). The movant bears the burden of establishing its

right to intervene. See United States v. Tex. E. Transmission Corp., 923 F.2d 410, 414 (5th Cir.

1991).

"The timeliness of a motion to intervene is assessed in light of all the circumstances, including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances." Utah Ass'n of Counties v. Clinton, 255 F.3d 1246, 1250 (10th Cir. 2007). "Unusual circumstances" refers to those circumstances that would excuse the untimely filing of a motion to intervene. In re SEC, 296 F.App'x 637, 640 (10th Cir. 2008)(unpublished).

In the absence of an unconditional, federal statutory right to intervene, a movant must satisfy the following three criteria to qualify for intervention of right: (i) the movant must have an interest in the subject matter of the litigation; (ii) the movant's interest will be impaired or impeded if movant is not allowed to intervene; and (iii) the existing parties to the litigation will not adequately represent the movant's interest. See Fed. R. Civ. P. 24(a)(2). "To satisfy [the impairment] element of the intervention test, a would-be intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied. This burden is minimal." WildEarth Guardians v. U.S. Forest Serv., 573, F.3d 992, 995 (10th Cir. 2009)("If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene."). "Although the intervenor cannot rely on an interest that is wholly remote and speculative, the intervention may be based on an interest that is contingent upon the outcome of the litigation." San Juan Cnty., Utah v. United States, 503 F.3d 1163, 1203 (10th Cir. 2007)(en banc).

"To permissively intervene, a party need not have a direct personal or pecuniary interest in the subject of the litigation." San Juan Cnty., Utah v. United States, 503 F.3d at 1207. Permissive intervention lies in the court's sound discretion, and the appellate court will not disturb the district

court's exercise of that discretion absent clear abuse.   See United Nuclear Corp. v. Cranford Ins. Co., 905 F. 2d 1424, 1427 (10th Cir. 1990).  The court is required to consider whether intervention will cause undue delay or prejudice when considering whether to grant permissive intervention.  See Fed. R. Civ. P. 24(b)(3); DeJulius v. New England Health Care Emps. Pension Fund, 429 F.3d 935, 943 (10th Cir. 2005)(noting that district courts required to consider undue prejudice or delay in deciding whether to grant permissive intervention); Am. Ass'n of People with Disabilities v. Herrera, 257 F.R.D. 236, 259 (D.N.M. 2008)(Browning, J.).  While not a required part of the test for permissive intervention, a court's finding that existing parties adequately protect prospective intervenors' interests will support a denial of permissive intervention.  See City of Stilwell, Okla. v. Ozarks Rural Elec. Coop. Corp., 79 F.3d 1038, 1043 (10th Cir. 1996).  In American Association of People with Disabilities v. Herrera, the Court found that allowing individuals to intervene in the case would be inappropriate, because the defendant was adequately representing any interests the prospective intervenors might have and allowing their intervention would cause delays.  See 257 F.R.D. at 259.  The Court also found that fairness required that the Court deny the motion to intervene, because the potential number of intervenors was so great, and, if the Court let one voter or legislator intervene, it would need to let other, similarly situated persons intervene.  See Am. Ass'n of People with Disabilities v. Herrera, 257 F.R.D. at 259-60.  In Lane v. Page, 250 F.R.D. 634 (D.N.M.)(Browning, J.), the Court held that it did not need to decide the motion to intervene in the class action that a class member filed, because the Court would have to decide the issues that the prospective intervenor raised in the normal course of the case.  See 250 F.R.D. at 642 ("Regardless whether Martin is a party to this litigation or not, the Court will have to decide whether the notice Lane published complies with the PSLRA's requirements, whether Lane is the most adequate plaintiff to lead this litigation, and whether his choice of Lerach to represent him is appropriate.").

## ANALYSIS

The Court finds that, upon preliminary examination, Dzula and Janisz are not class members. The Court, construing the Motion as one to intervene, will deny the Motion, because Dzula's and Janisz' allegations raise issues outside of the class claims.  If Dzula and Janisz are class members, the current class representatives and the Kennedy Law Firm will adequately represent their interests, and they may claim their damages out of any class fund that may be recovered.

## I.    THE COURT DOES NOT BELIEVE THAT DZULA AND JANISZ ARE CLASS MEMBERS.

The class is defined as "all individuals or corporations whose property was seized without court order, or who were deprived of their property for suspected drug use and subsequent to the City of Albuquerque's Criminal Nuisance Abatement Team designating their property as substandard from three years before Plaintiff Kevin Lowery filed his Class Action Complaint." April 13, 2011 MOO at 40.  The Court based its class certification decision on its finding that common questions of law and fact predominate, because: (i) the Plaintiffs allege "that the Defendants have an ongoing policy and practice of ejecting people from their homes when they find evidence of drug use anywhere on the property"; (ii) each "class member's claims are based upon the same theories of liability and will require the same proof"; and (iii) the Plaintiffs would have the same "general damages."  April 13, 2011 MOO at 36-37.  Dzula and Janisz did not, in the Motion or at the hearing, state that their buildings were condemned because of the Drug Lab Ordinance, that inspectors tested their property for any drugs, or that they were forced to remediate any drug "contamination" discovered.  Dzula's and Janisz' only references to drugs were that their tenants were accused of drug use and that such accusations were intended to harass them.  See Motion at 4. Dzula and Janisz alleged that their properties were cited for housing code violations such as: (i)

an unsafe roof, <u>see</u> Tr. at 53:22-25 (Janisz); and (ii) exposed electrical wire and use of natural gas flex tubing, <u>see</u> Motion at 4.   Dzula also alleges that his buildings were red-tagged without inspection in retaliation for Dzula's complaints.  <u>See</u> Motion at 5-6. The weight of Dzula's and Janisz' allegations are not a violation of their rights under the Fourth Amendment, but violations of Fifth Amendment's Taking Clause and of the Equal Protection Clause, and retaliation for the exercise of their rights.   Dzula states that he was and is being victimized "by certain actions violating his <u>Constitutional rights</u>, his civil <u>rights</u>, his right to <u>Equal protection under the Law</u>, and Wrongful application of the <u>imminent</u> [sic] <u>Statutes</u> by, City of Albuquerque's Housing Code & Abatement unit, during that time that Martin Chavez Was a City of Albuquerque's Mayor." Motion at 2 (emphasis original).  Moreover, Dzula and Janisz characterize their injuries as part of a "multi-million dollar Property grabbing scam." Motion at 2.  Accordingly, Dzula and Janisz do not appear to fall within the definition of the class.

Other issues may also preclude Dzula and Janisz from being recognized as class members. The Kennedy Law Firm and the Defendants expressed concern that the applicable statute of limitations may bar Dzula's and Janisz' claims, because their claims originated in 2004.  <u>See</u> Tr. at 54:14-17 (Kennedy); <u>id</u>. at 56:8-16 (Levy).  Although Dzula and Janisz may continue to feel the effects of the alleged violations of their constitutional rights, generally, the statute of limitations for a civil rights action begins to run "when the plaintiff knows or has to reason to know of the existence and cause of the injury which is the basis of his action."  <u>Mata v. Anderson</u>, 760 F.Supp.2d 1068, 1086 (D.N.M. 2009)(Browning, J.)(citing <u>Alexander v. Oklahoma</u>, 382 F.3d 1206, 1215 (10th Cir. 2004)).  Dzula and Janisz attach very few dates to their allegations, but, if these violations began in 2004, it may be that the statute of limitations bars their claims.  Furthermore, Dzula makes several references to a state court case which also addressed these issues.  <u>See</u> Motion at 6-8. If these issues

were decided in state court, it may be that Dzula's and Janisz' claims are barred under the doctrines of collateral estoppel and res judicata.

## II.  THE COURT WILL DENY THE MOTION.

Because the Court does not believe that Dzula and Janisz meet the class definition, the Court will treat the Motion as a motion to intervene.  Construing the Motion in this manner, the Court will deny the Motion, because there is no intervention as of right, and Dzula's and Janisz' claims do not appear to share common questions of law or fact with the class.  Even if Dzula and Janisz are members of the class, the Court would decline to let them intervene in this manner, because their claims can be handled at the claims processing stage.

### A.  ASSUMING THAT DZULA AND JANISZ ARE NOT CLASS MEMBERS, THE COURT WILL NOT PERMIT THEM TO INTERVENE IN THE CLASS ACTION.

Dzula and Janisz point to no federal statutory right to intervene that would apply. Accordingly, they must show that they have an interest "relating to the property or transaction that is the subject of the action," and that "disposing of the action may as a practical matter impair or impeded the movant's ability to protect its interest."  Fed. R. Civ. P. 24(a)(2).  Dzula and Janisz do not have an interest or property of which the class litigation will dispose.  They are thus not entitled to intervene as a matter of right.

With respect to permissive intervention, if they are not class members, then they have no right to intervene under rule 24(b)(1), because their claims do not share common questions of law or fact with the class action.  Although both their claims and the class claims involve inspections for housing code violations and involve some of the same inspectors, Dzula's and Janisz' allegations involve different constitutional violations and factual questions.  The class action focuses on alleged Fourth Amendment violations and the costs of remediation for drug contamination that rose above

-21-

certain levels.  See April 13, 2011 MOO at 36-37.  Dzula and Janisz alleged that there was a "multi-million dollar Property grabbing scam," Motion at 2, and that the housing code was selectively enforced against them to obtain their properties under market value and to harass them, see Motion at 4-5.  Presentation of evidence regarding Dzula's and Janisz' allegations would diverge substantially from the other evidence presented regarding the Drug Lab Ordinance and could confuse the jury.  Furthermore, the Plaintiffs and the Defendants would need time to investigate and assess Dzula's and Janisz' allegations, and any evidence that they may wish to present to the jury.  This case is set for trial on April 16, 2012, and the parties are adamant that they wish try this case as soon as possible.  See Tr. at 20:19-24 (Kennedy); id. at 21:1-5 (Levy).  To add new parties to this case on the eve of trial would be prejudicial to the existing parties.  See Utah Ass'n of Counties v. Clinton, 255 F.3d at 1250 ("The timeliness of a motion to intervene is assessed in light of all the circumstances, including . . . prejudice to the existing parties . . . .").  Their addition would further delay the trial of this case and would prejudice the parties who have been preparing for trial since the Court's Jan. 24, 2012 MOO.  A court is required to consider whether intervention will cause undue delay or prejudice.  See Fed. R. Civ. P. 24(b)(3).  See also DeJulius v. New England Health care Emps. Pension Fund, 429 F.3d at 943; Am. Ass'n of People with Disabilities v. Herrera, 257 F.R.D. at 259.  Permitting Dzula and Janisz to intervene, thus adding these new issues to the case, would further complicate an already complicated case.  If Dzula and Janisz wish to pursue these claims, then they should file a separate lawsuit -- this case is not an appropriate vehicle for claims independent of the alleged Fourth Amendment violations related to the Drug Lab Ordinance.

Permissive intervention lies in the court's sound discretion.  See San Juan Cnty., Utah v. United States, 503 F.3d at 1207.  Here, the Court will decline to exercise its to discretion.  Assuming the Dzula and Janisz are not class members, their claims will add new issues which will complicate

the case, intervention will delay the case's April 16, 2012 trial setting, and the addition of their claims will confuse the jury.  Accordingly, the Court will deny the Motion on this basis.

### B.    ASSUMING THAT DZULA AND JANISZ ARE CLASS MEMBERS, THE COURT WILL NOT PERMIT THEM TO INTERVENE AS NAMED PLAINTIFFS.

If Dzula and Janisz are class members, the Court will still deny their Motion.  The movant bears the burden of establishing its right to intervene.  See United States v. Tex. E. Transmission Corp., 923 F.2d at 414.  Dzula and Janisz have not established that any federal statute grants them an unconditional right to intervene, see Fed. R. Civ. P. 24(a)(1), and have not argued that K. Lowery, Lovato, Gabaldon, and Thomas or the Kennedy Law Firm will not adequately represent their interests, see Fed. R. Civ. P. 24(a)(2).  Accordingly, the Court's analysis will proceed under rule 24(b) -- permissive intervention.

The Court addressed a similar issue in its Jan. 24, 2012 MOO.  There the Court held that prospective-intervenor class members should not be permitted to intervene, because, although their claims share common law and fact questions, allowing individual class members to intervene and present their individual claims would prejudice the class.  See Jan. 24, 2012 MOO at 48.  The Court also found that, if class members were permitted to intervene and direct the litigation, "the City of Albuquerque would be faced with multiple claims within the same case and an uncertain level of exposure." Jan. 24, 2012 at 49.  Furthermore, having already denied the motion of the prospective intervenors, the Court should not now allow other parties to intervene.  As the Court noted in the Jan. 24, 2012 MOO:

> In American Association of People with Disabilities v. Herrera, the Court addressed whether it should permit various state politicians or the Republican Party of New Mexico to intervene as defendants in a lawsuits.  See 257 F.R.D. at 240.  The Court held that fairness required that the Court deny the motions to intervene, because, if "it lets one voter, or one legislator who voted for the bill, intervene, it may need to

> let others similarly situated intervene," and at some point the Court must cut off the intervention of such persons to make a decision.  Similarly, in this case, there are ten people who wish to intervene in the class action to pursue their individual claims, because they do not like the proposed settlement; if the Court permits the Prospective Intervenors to join the case, the Court would, in fairness, have to permit any other class member who opt out of a proposed settlement and wish to proceed to trial the same opportunity to join this case.  Ten out of a class of approximately 200 to 300 members is already a significant number and would make managing this case difficult, and if more class members choose to pursue this course of action, the case could become unmanageable.  See Hiser v. Franklin, 94 F.3d 1287, 1292 (9th Cir. 1996)("If every member of the class were compelled to intervene to protect his individual claims, serious questions would be raised as to the adequacy of the class representatives, and the class action would become unmanageable.").

Jan. 24, 2012 MOO, at 49-50.  Dzula and Janisz have not provided the Court with any reason to believe that K. Lowery, Lovato, Gabaldon, and Thomas or the Kennedy Law Firm will fail to adequately represent the class.  Dzula and Janisz also did not explain to the Court why, if they are class members, the Court should add them as named plaintiffs and allow them to present evidence, rather than letting the current class representatives follow their litigation strategy.  If the Court adds more named Plaintiffs, as the Court has previously noted, the class could quickly become unmanageable.  Assuming that Dzula and Janisz are class members and will seek damages for their economic losses related to the Drug Lab Ordinance, there is no reason to think that the Plaintiffs will not adequately represent their interests and any damages to which they are entitled can be established at the end of the litigation through a claim in the class fund.  Moreover, this case is not the appropriate vehicle for any other claims against the City of Albuquerque for alleged Equal Protection or Takings-Clause violations, even if Dzula and Janisz are class members.

Permissive intervention lies in the court's sound discretion.  See San Juan Cnty., Utah v. United States, 503 F.3d at 1207.  Many of the same factors which led the Court to deny the Motion, if Dzula and Janisz are not class members, also apply here.  To add new named plaintiffs would cause delay and prejudice the parties.  The Motion was filed a little over a month before the trial

setting.  Permitting Dzula and Janisz to intervene would force the parties to reconsider their trial strategies and could affect the length of the trial.  The Court would also have to carefully monitor Dzula's and Janisz' presentation of evidence to insure that allegations not relevant to the class Fourth Amendment violations was not admitted and would not confuse the jury.  Dzula and Janisz have not established why the class lawsuit should not operate in the ordinary manner with the class representatives representing their interests or why the jury needs to hear their evidence. Accordingly, the Court will deny the Motion.

   **IT IS ORDERED** that the Motion Requesting to Be Included as a Co-Plaintiff in This Class Law Suit [sic] Against the City of Albuquerque, filed February 27, 2012 (Doc. 104), is denied.  If John M. Dzula and Joanna Janisz believe that they are class members, at the end of the litigation, they may file a claim to recover their damages from whatever may have been recovered on the class' behalf.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Joseph P. Kennedy
Shannon L. Kennedy
Kennedy Law Firm
Albuquerque, New Mexico

   *Attorneys for the Plaintiff*

Kathryn Levy
City of Albuquerque Legal Department
Albuquerque, New Mexico

   *Attorneys for the Defendants*

-25-